# CHARLESTON.

## KOCH et al. v. WYLLIE CHINA CO.

Submitted April 17, 1917.   Decided May 1, 1917.

APPEAL AND ERROR—*Harmless Error—Exclusion of Testimony.*

A judgment will not be reversed for excluding testimony when this court can see plainly a verdict in accordance therewith could not be sustained.

Error to Circuit Court, Cabell County.

Action of assumpsit by A. W. Koch and others, partners, etc., against the H. R. Wyllie China Company. Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*Enslow, Fitzpatrick & Baker,* for plaintiff in error.

*Geo. S. Wallace,* for defendant in error.

WILLIAMS, JUDGE:

This action of assumpsit was brought before a justice and, after judgment, appealed to the circuit court. It was there tried by a jury resulting in a verdict and judgment in plaintiffs' favor for $219.42, and defendant brings error.

Plaintiffs, A. W. and C. F. Koch, are partners doing business in the name of National Sales Company and have their place of business in Cincinnati. They make and sell clay filter sacks, used in the manufacture of pottery. Defendant, H. R. Wyllie China Co., is a corporation engaged in manufacturing dinner ware, art ware and specialties, in the city of Huntington. This action is for the price of seventy-five No. 1 and one hundred and fifty No. 2 filter sacks at 92c each, which defendant purchased on the 5th of January, 1915, to be shipped on the 1st of the following February. Issue was joined on the plea of non-assumpsit. Plaintiffs shipped the sacks on the 5th of May, 1915, after defendant gave notice it would not accept them. But the notice was not given until after plaintiffs had manufactured the sacks of a special size to fit defendant's clay presses. The defense

is that the sacks were not made of the quality of material
as represented and were not reasonably fit for defendant's
use. There is no evidence of an express warranty that the
sacks 'were to be of a particular quality, but plaintiffs admit
they were to be made of a material known as German green
duck, and both C. F. Koch and plaintiffs' tailor, who made
the sacks, swear they made all their clay filter sacks of that
material. There is no evidence directly contradicting this.
Mr. Wooten, defendant's general manager, who gave the or-
der for the sacks, was asked what he knew about the last
shipment, and said he knew nothing about it. Although it
is proven the sacks remained at the factory for two weeks or
more, no one appears to have examined them. When Wooten
was asked why they were not used, he replied that it was
"on account of their previous bad quality of their other
sacks." Some sacks of a previous shipment, which had been
used on the presses, were exhibited to the jury, and Wooten
and another witness or two testified that they were inferior
in quality and did not last nearly so long as first class Ger-
man green duck should last. But the court struck out all
the evidence relating to the quality of former shipments, and
this is assigned as error. It is argued that it was proper
evidence to be considered by the jury on the question of the
quality of the sacks that had been returned. In the absence
of any more direct evidence of the material of which the
sacks were made, the jury might perhaps be justified in in-
ferring the bad quality of the last shipment, from evidence
tending to prove some prior shipment was not of the quality
represented, and it may be the court should have allowed the
evidence to go to the jury. But we do not think it necessary
to determine that question here, for the reason that, if it had
gone to the jury and it had found for defendant on the
strength of it, it could not have supported the verdict, be-
cause of the great preponderance of the evidence in favor
of plaintiffs, much of which consists of letters written by
defendant to plaintiffs between the time it gave the order
and the time the sacks were shipped.

It is contended in brief of counsel that the goods were
sold by sample, but no witness testified they were. Mr.

Wooten, who gave all the orders for sacks, says he "supposed it to be first quality; German Duck." When asked whether or not he was shown a sample he answered as follows: "On the first lot that we got, I am not positive whether I ever saw a sample of their own, but they were sold as German duck— German green duck." No witness intimates that Koch sold the last lot by sample. Mr. Koch himself does say that at the time he took the last order "Mr. Wooten pulled a piece of green filter cloth out of his desk and called my attention to the fact that the material that had been shipped recently was not as thick or as heavy as the sample he had in his desk. The fact is I do not know whether he ever got the sample from us and I explained to him at that time, that it was a matter of quality but that due to the contraction of the cloth with the chemical it some times appeared heavier than at other times, and on the strength of that, then Mr. Wooten told me to speak to Mr. Spitler and ask him for the order." No witness explains where that sample came from, nor is there any evidence that it was represented the sacks were to be made of material as good as the sample, or that the sacks returned were not in fact as good as the first shipment, received in April 1914, with which defendant admitted it was satisfied. The last shipment was returned without inspection or examination. The reason why the sacks were returned is otherwise explained by defendant's letters, identified and read to the jury.

At the time this order was given defendant owed plaintiffs for a previous shipment and wanted this one withheld until it could pay the overdue account. This appears from a letter written by defendant on the 28th of January, in reply to one from plaintiffs of the previous day requesting payment of the overdue account. After explaining why it had not paid and promising payment by the first of the month, defendant concludes its letter as follows: "In this connection will say that we are not in any special hurry for the sacks ordered for shipment Feb. 1st, as we want to get our account in good shape before this shipment arrives." And under date of March 29th, 1915, defendant wrote plaintiffs the following letter in answer to one of the 26th:

"Inasmuch as the payment of our account covering the last shipment of clay sacks was long drawn out on account of slow collections and general business depression, I requested you to withhold shipment of our order which no doubt you fully intended doing under the circumstances. In the meantime, the manager experimented with several cheaper sacks with the result that we are now making our own sacks at considerable saving and for this reason we could not well handle the shipment at this time. This explains why we cancelled the order."

In reply to this letter plaintiffs wrote defendant on March 30th, that if it had notified them sooner they would not have made up the order, saying:

"The entire order is made up, and all the sacks are according to the special pattern which fits your press only and no other, therefore if you do not take the goods they are entirely worthless to us, and therefore you ought not to expect us to stand the loss when it is not our fault. We hope that you will permit us to send on the order and we await reply in regard to same."

No reply was made to this letter and, on the 6th of April, they again wrote defendant to know whether they should ship the sacks, again calling defendant's attention to the fact that they had been made up according to diagram furnished by it. And to this letter defendant replied on April 7th at length, and among other things wrote:

"We have your letter of April 6th, relative to clay sacks which you claim were made up before we cancelled the order. The facts in the case are; the sacks you have been furnishing for some time have not been the same material as used by you formerly, being inferior in every respect, however, the same was represented to us as being genuine imported German duck. We cancelled the order because we saw where we could get a the material and make a better sack for 60c each, and in view of the fact that we had not paid our last account and the attitude manifested, we did not consider that our account was satisfactory to you and the goods not satisfactory to us, therefore, the best thing to do would be to stop doing business together." In this letter defendant pro-

posed to take the sacks at 60c each, but declined to accept them if plaintiffs insisted on demanding more than that price. On April 9th plaintiffs wrote defendant they would expect it to carry out its agreement, and on the 5th of May shipped the sacks to defendant. On the 21st of May, defendant wrote again, expressing the hope that their difference might be compromised, and again complained of the bad quality of material used in previous shipments, saying they had not gotten half service out of the October shipment, and proposed to accept the shipment, if plaintiffs would make a reasonable and satisfactory allowance on account of defendant's loss. This seems to have ended the correspondence. Defendant returned the sacks after May 21st, but the exact date when they were returned does not appear. The force of the foregoing correspondence as evidence of defendant's reasons for desiring to cancel the order is readily seen. Its manager had experimented with sacks made of a cheaper material and was then making its own sacks "at considerable saving," and its letter of March 29th concludes, "This explains why we cancelled the order."

In view of these letters, and in the absence of any evidence that the sacks rejected were not of the quality represented, except mere inference from testimony tending to prove the bad quality of some prior shipment, the verdict was plainly according to the very right of the case. In fact, the court would have been justified in directing a verdict for plaintiffs. The judgment is affirmed.

*Affirmed.*